ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
GEORGE O. HAGEMAN (CABN 332457)
AMANI S. FLOYD (CABN 301506)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7534
    Fax: (415) 436-7234
    Leif.Dautch@usdoj.gov
    George.Hageman@usdoj.gov
    Amani.Floyd@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 5:24-CR-00226-BLF-006 |
| Plaintiff, | ) UNITED STATES' MEMORANDUM OF POINTS |
| v. | ) AND AUTHORITIES IN SUPPORT OF MOTION<br>) FOR PRETRIAL DETENTION |
| JOSE MEXICANO aka "Armani," | ) Date:   May 8, 2024 (Detention Hearing) |
| Defendant. | ) Time:   1:00 p.m.<br>) Court:  Honorable Nathanael Cousins |

## I.     INTRODUCTION

In an indictment unsealed on May 2, 2024, the Grand Jury charged 11 members of the Salinas Acosta Plaza (SAP) Norteño criminal street gang with Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).  As outlined in the 37 overt acts listed in the indictment, the government alleges that this violent street gang is responsible for at least eight murders and ten attempted murders, as well as dozens of other shootings, robberies, and assaults.  The government also alleges that the gang is heavily involved in firearms trafficking, drug trafficking, and witness intimidation.  For years, the gang has occupied and terrorized a multi-family apartment complex in East Salinas.  Their victims have included women and children, unhoused residents of a nearby encampment, actual and perceived gang rivals, and those who attempted to leave the gang lifestyle behind them.

Defendant Jose Mexicano should be detained pending trial based on his danger to the community and risk of flight.  *See* 18 U.S.C. § 3142(e)(1).  This memo begins with a brief overview of the charged criminal enterprise, but the bulk of the memo consists of a defendant-specific analysis of Jose Mexicano's criminal conduct and the unmitigable risk he poses to the community, including his acts of violence and his encouragement of violence by others.  The government's allegations herein are supported by the Grand Jury's findings in the indictment, as well as an initial production of discovery that was provided to the defendant at his arraignment on May 2, 2024.

## II.     LEGAL STANDARDS

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A defendant's danger to the community must be supported by clear and convincing evidence, but a defendant's flight risk need only be supported by a preponderance of the evidence.  *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against

GOVERNMENT DETENTION MEMORANDUM          1
5:24-CR-00226-BLF-006

the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f). It is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

Where there is probable cause that a defendant has committed an offense for which a maximum of ten years in prison or more is prescribed in the Controlled Substances Act, courts apply a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.* (citation omitted).

## III.    THE ENTERPRISE: SALINAS ACOSTA PLAZA NORTEÑOS

The criminal enterprise charged in the indictment is the Salinas Acosta Plaza (SAP) Norteño criminal street gang. Originating in the 1990's in the Acosta Plaza apartment complex in East Salinas, the gang has terrorized the families and individuals living in and around the complex, claiming the area as its home turf. Four of the charged defendants (Vasquez, Ramirez, Hernandez, and Alvarez) have served as the gang's "Channel," a liaison between the street gang and the incarcerated Nuestra Familia leadership that oversees Norteño street gangs throughout the Bay Area. These Channels collect gang dues, with which they purchase firearms and narcotics for the gang to sell, and either approve or ratify criminal activity like gang shootings. Many of these shootings are targeted at perceived rival Sureño gang

GOVERNMENT DETENTION MEMORANDUM        2
5:24-CR-00226-BLF-006

members, but SAP members have also killed non-affiliated members of the community, including unhoused people who reside in the undeveloped Carr Lake area adjacent to Acosta Plaza.

As alleged in the indictment, SAP gang members have engaged in the following categories of racketeering activities:  murders, attempted murders, murder solicitation, robbery, drug trafficking, firearms trafficking, and witness retaliation and intimidation.  Detailed here are just some of the violent crimes committed in recent years by SAP members against vulnerable members of the community:

### A.    Murder and Attempted Murder on May 1, 2020

On May 1, 2020, Salinas PD Officers were dispatched to three victims of a shooting in the homeless encampments near Carr Lake, just behind the Acosta Plaza complex.  One victim died on scene, and two additional victims survived.  The investigation revealed that approximately five subjects approached the victims and identified themselves as "Acosta Plaza," before two of the suspects shot the victims.  Salinas PD was able to identify one of the shooters as John Barriga, a documented SAP member.  One of the surviving victims picked Barriga out of a lineup and identified him as a shooter.  On August 23, 2022, Barriga pled guilty in state court to voluntary manslaughter with a gang allegation and was sentenced to 25 years in prison.  The additional suspects are still unidentified.

### B.    Murder and Attempted Murder on September 20, 2020

On September 20, 2020, Salinas PD Officers were dispatched to two victims of a shooting in the homeless encampments near Carr Lake, just behind the Acosta Plaza complex.  One victim was pronounced dead on scene, and one additional victim survived.  The surviving victim said that four individuals had approached, asked if he was in a gang, and ordered him to take off his shirt so they could check for gang tattoos.  After accusing the victim's tattoo of being gang-related, they marched the two victims at gunpoint to a different area and shot them both in the head.

### C.    Murder on March 23, 2021

On March 23, 2021, Salinas PD Officers were dispatched to a victim of a shooting in the homeless encampments near Carr Lake, just behind the Acosta Plaza complex.  The victim was pronounced dead on scene from multiple gunshot wounds to the chest.  Approximately 10 feet away from the victim's body, officers located a loaded magazine and several fired casings.  The investigation revealed that two suspects identified themselves as police and made the victim show them his tattoos prior to shooting him.  One

GOVERNMENT DETENTION MEMORANDUM        3
5:24-CR-00226-BLF-006

witness noted that the victim was not "allowed" in the area because he was previously a gang member in El Salvador (but no longer active). The magazine and fired cartridge casings were later processed for DNA. Two DNA profiles were located on unspent rounds inside of the magazine, and they matched those of SAP members Ivan Barriga (currently in state custody) and Salvador Mexicano (charged here).

**D.      Attempted Murder on January 23, 2023**

On January 23, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation showing 27 rounds fired in the area of 1041 Sieber Street, one block away from Acosta Plaza. Upon arrival, officers located two intended victims, both documented Sureño gang associates. Neither victim was hit by gunfire. The investigation revealed that the victims got into an argument with several males in a white BMW, and the BMW followed them to Sieber Street. Minutes later, two males approached Sieber Street, from the area of Acosta Plaza, yelled "Plaza boys" and opened fire, firing 31 rounds at the victims. The males then fled on foot, back towards Acosta Plaza. Salinas PD determined that the BMW mentioned was a white BMW associated with SAP members Jesus Saldana (currently in state custody facing a murder charge) and Jose Saldana (charged here).

**E.      Attempted Murder on April 3, 2023**

On April 3, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation of nine rounds at 1036 N. Sanborn Rd. Upon arrival, officers located three fired cartridge casings in the street, and observed eight bullet strikes to the apartment complex at 1036 N. Sanborn Rd. Officers canvassed the area for video and obtained video surveillance of a white BMW fleeing the scene just seconds after the shooting. The BMW's license plate matched that of a white BMW associated with SAP members Jesus Saldana (currently in state custody facing a murder charge) and Jose Saldana (charged here).

**F.      Murder and Attempted Murder on May 20, 2023**

On May 20, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation of 25 rounds of fully automatic gunfire near 824 Garner Avenue. Upon arrival, they found a deceased male victim suffering from multiple gunshot wounds, a surviving male victim shot twice, as well as a female victim in a nearby apartment hit by a stray bullet. The female victim was hit in the spine. Her six-year-old daughter provided minimal medical attention until she was able to be transported to the hospital. She survived but is paralyzed. Surveillance video showed SAP member Abel Perez's vehicle near the shooting, and two

shooters running near the shooting. Officers found two firearms, one of which was a Glock converted into a fully automatic firearm, hidden in an electrical box in Acosta Plaza. Also, in the box, was a black hat matching the hat worn by one of the shooters with Ivan Barriga's DNA on it. Both Barriga and Perez were later charged with homicide with gang enhancements.

### G.    Attempted Murder on June 24, 2023

On June 24, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation for a single shot at 916 Acosta Plaza #17. The victim reported that he and his nephew were hanging out near the apartment when a white sedan approached. The driver stayed inside, while a male and a female got out. The male asked if they wanted to buy "product" (likely cocaine) and gave a free sample. The victim claimed it was just flour. An argument ensued. The male brandished a firearm and fired one round at the victim's face, then kicked him, returned to the car, and fled. At the hospital, doctors were unable to determine conclusively whether the injury to the victim's face was caused by a bullet strike or by a pistol-whipping or other blunt force trauma. Instagram records show that Raul Coronel (charged in this indictment) sent SAP member Marco Sanchez a/k/a "Cooks" a screenshot of a news article about the shooting the next day. Coronel said: "making it seem like you active cooks" and "ur good mann," to which Sanchez responded: "hahaha" and "if I wanted them dead they would have been." Coronel responded: "not the paisano" and "lol." Call detail records put them both in the area at the time.

### H.    Witness Intimidation from July 2023 to November 2023

On July 12, 2023, a Molotov cocktail was thrown into 914 Acosta Plaza #97 while the family was asleep. The family, not known to be affiliated with SAP, reported the incident to police and moved out soon after. Around August 11, 2023, while the same unit #97 was vacant, somebody broke into the unit and vandalized it with graffiti saying "rata" (i.e., rat), "SAP," and "snitch fat fuck." On November 13, 2023, Raul Coronel (charged here) got into an argument with the owner of unit #97 for attempting to have Coronel's car towed from unit #97's parking spot. In the course of the argument, Coronel threatened the man, making a statement implying that what happened to the unit in July might happen again.

GOVERNMENT DETENTION MEMORANDUM        5
5:24-CR-00226-BLF-006

 

 

## I.    Seizure of 97 Firearms on January 18, 2024

On January 18, 2024, Salinas PD Officers executed a search warrant at the home of SAP member Juan Perez at 918 Acosta Plaza #74.  Surveillance footage had shown suspected SAP members running to and from this apartment around the time of several recent shootings, leading law enforcement to believe that it was used by SAP in their violent activities.  Inside, officers found 97 handguns, shotguns, and rifles.



## IV.   **ARGUMENT**

Jose Mexicano is an SAP member who has taken on a mentorship role to younger gang members while also continuing to engage in criminal activity himself, including drug trafficking, firearms trafficking, and violence.  He faces a rebuttable presumption in favor of detention based on his drug trafficking activity, and there is no condition or combination of conditions that can reasonably assure his appearance or the safety of the community.

### A.   **Danger to the Community**

#### 1.   *Jose Mexicano has a long association with SAP*

Jose Mexicano is a longtime member of SAP.  In a culture where tattoos are earned for loyalty and criminal acts on behalf of the gang, he has several prominent SAP-related tattoos including: a full "SAP" across his chest, "900" on his right arm (a reference to the gang's home turf on the 900 block of Acosta Plaza), "A" on his right hand, and "P" on his left hand.  His Instagram handle (armani9_) is a reference to his gang moniker and the 900 block.  He can be seen throwing up gang signs (e.g., "A" and "P") and regularly associates with other co-defendants including Salvador Mexicano (his younger brother), Lorenzo Garcia, Juan Alvarez, and Sergio Hernandez, and many other known SAP members.



#### 2.   *Jose Mexicano is a mentor to many younger SAP members*

Although Jose Mexicano never held the "channel" role, he was nevertheless a mentor to the younger generation of SAP members.  For example, on May 14, 2022, Instagram records show Jose Mexicano scolding Ivan Barriga, the suspect in several of the murders and attempted murders listed above, for previously vouching for someone who was "throwing up the hood" (i.e., claiming to represent the gang) without permission.  Barriga apologized and reaffirmed to Jose Mexicano that he will do better:

GOVERNMENT DETENTION MEMORANDUM       7
5:24-CR-00226-BLF-006

"Ima be a beast like you n ur bro." It is telling that, in a gang where respect is earned based on past violent acts, Jose Mexicano is referred to by a known shooter as a "beast." On January 10, 2023, Jose Mexicano again scolded Barriga for bringing a firearm to a situation where he ended up having to run from the police.

Jose Mexicano has also taken a leadership role in collecting gang dues for the channel. For example, on November 29, 2022, he messaged an SAP "group chat" on Instagram to collect dues and asked for an additional sum to "catch up wat was lost" after his brother (co-defendant Salvador Mexicano) "was taken in with the monthly." Similarly, on April 8, 2023, Jose Mexicano discussed pooling money in order to bail co-defendant Gustavo Garcia out of jail.

### 3. *Jose Mexicano is heavily involved in drug trafficking*

On May 13, 2021, Jose Mexicano was searched by Salinas PD Officers and caught with 85 blue fentanyl-laced M30 pills and $426 in cash. Later, in 2022 and 2023, Instagram records show Jose Mexicano personally selling or orchestrating the sale of fentanyl-laced M30 pills, cocaine, and mushrooms. He often enlisted junior members of SAP to engage in the criminal activity with him. Between June 2022 and January 2023, for example, he regularly instructed SAP member Ivan Barriga to deliver specific numbers of pills (ranging from a few pills to several dozen) to customers waiting nearby, even going so far as to direct Barriga on how to split the pills between bags so that he does not get robbed. On January 25, 2023, he asked Barriga if he can "keep [his] backpack with [his] blues at [Barriga's] spot for a bit." On February 12, 2023, he explained the going rates for "yellow," "purple," and "red" fentanyl to SAP member Mark Avalos. On June 23, 2023, he asked an SAP associate to come with him to pick up one pound of mushrooms in San Jose for them to resell. On October 10, 2023, he told SAP member Devin Sandoval that he was selling an 8-ball of cocaine for $150. When only two milligrams of fentanyl can kill, *see* www.dea.gov/onepill, these regular sales of M30 pills pose a significant danger to the community. Furthermore, he engaged in this activity despite a previous conviction for possession of controlled substances in 2019 and despite still being on probation for much of the time period.

### 4. *Jose Mexicano remains engaged in firearms trafficking and acts of violence*

Jose Mexicano has a long history of firearms possession and trafficking. In February 2018, he was caught with a stolen Smith & Wesson .357 Magnum revolver in his waistband and later convicted of

concealed carry of a firearm. On April 28, 2020, he ran from the police as they approached him in Acosta Plaza. Officers temporarily lost sight of him during the chase but heard the sound of something metallic hitting the ground as he ran through a carport. Officers found a Stern Ruger Super Blackhawk .357 revolver under a car in the carport where the sound was heard. Jose Mexicano was later convicted of being a felon in possession of a firearm.

Jose Mexicano served a brief sentence in custody and then, upon his release, appears to have immediately returned to firearms trafficking. On November 3, 2022, Instagram records show him discussing the purchase of two compact 9mm handguns for $1400 with SAP member Marco Sanchez. On November 6, 2022, he told SAP member Ivan Barriga, "Ima buy that woo off you son" (note: woo is slang for firearm). On December 22, 2022, he asked Barriga for help in funding the purchase of a "clean asf" Glock 30. On April 21, 2023, he discussed the purchase of a silencer with Barriga. On June 22, 2023, he talked with SAP member Richard Izquierdo about the purchase of a P90 firearm from him for $2200-2500. On July 3, 2023, he discussed with another person about purchasing a Glock 36 mini .45 caliber and a .22 caliber for $1200 each. On August 29, 2023, he discussed with an SAP associate about how Glocks are around $1000, how ghost guns are even more expensive, and how they should go up to the Bay Area to buy some more.

Jose Mexicano also commits acts of violence himself. As recently as February 24, 2024, a video posted on social media shows Jose Mexicano and SAP member Jesus Saldana beating someone in a street fight, including by kicking the victim while he is on the ground. A Ramey warrant was issued for this incident. This was not his first street fight; in another incident on July 20, 2017, Jose Mexicano and co-defendant Salvador Mexicano beat a man in a dispute over an Acosta Plaza parking slot. He also appears to seek out violence: on June 9, 2022, for example, he asked Barriga, "where the plugs at to rob" (note: plugs is slang for drug dealers). Jose Mexicano may have already proven himself as a full-fledged gang member, but he still feels the need to engage in violence.

5.     *No condition or combination of conditions can ensure the safety of the community*

Jose Mexicano is a longtime SAP member who holds a mentorship and leadership role and directs others to engage in firearms and drug trafficking with him. He also engages in violent acts himself. Almost all of this activity took place while he was still on probation for previous convictions. His

involvement in the gang life did not stop despite prior arrests, charges, and convictions. As such, considering the presumption in favor of his pretrial detention, his long history of gang involvement and acts of violence, and his encouragement of violence by others, the government submits that there is no condition or combination of conditions that can reasonably assure the safety of any other person and the community.

**B.     Risk of Flight**

Jose Mexicano has proven that he cannot abide by court orders. His criminal history includes at least three probation violations in August 2019, January 2020, and July 2020. He became a felon in 2018 after being caught with a concealed weapon on his person, and then, in July 2020, he was convicted again for being a felon in possession of a firearm. He has a history of attempting to evade law enforcement (e.g., April 2020). Additionally, he faces a potentially lengthy sentence in the federal racketeering case—likely longer than any sentence he has previously served—which creates a strong incentive for him to flee. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee"). He cannot overcome the rebuttable presumption that no combination of conditions can ensure his return to court as ordered if he were to be released.

**V.     CONCLUSION**

Given the lack of conditions that can reasonably assure the safety of the community, or ensure his appearance at future court hearings, the government respectfully requests that the defendant be detained pending trial.

DATED:  May 6, 2024                                             Respectfully submitted,

                                                               ISMAIL J. RAMSEY
                                                               United States Attorney


                                                               _/s/_____
                                                               LEIF DAUTCH
                                                               GEORGE O. HAGEMAN
                                                               AMANI S. FLOYD
                                                               Assistant United States Attorney

GOVERNMENT DETENTION MEMORANDUM          10
5:24-CR-00226-BLF-006