ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
GEORGE O. HAGEMAN (CABN 332457)
AMANI S. FLOYD (CABN 301506)
Assistant United States Attorneys

       450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
       Telephone: (415) 436-7534
       Fax: (415) 436-7234
       Leif.Dautch@usdoj.gov
       George.Hageman@usdoj.gov
       Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 5:24-CR-00226-BLF-003 |
| Plaintiff, | UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION |
| v. | FOR PRETRIAL DETENTION |
| SERGIO HERNANDEZ JR. aka "Mono," | Date: May 14, 2024 (Detention Hearing) |
| Defendant. | Time: 1:00 p.m. |
| | Court: Honorable Nathanael Cousins |

GOVERNMENT DETENTION MEMORANDUM
5:24-CR-00226-BLF-003

## I.   INTRODUCTION

In an indictment unsealed on May 2, 2024, the Grand Jury charged 11 members of the Salinas Acosta Plaza (SAP) Norteño criminal street gang with Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).  As outlined in the 37 overt acts listed in the indictment, the government alleges that this violent street gang is responsible for at least eight murders and ten attempted murders, as well as dozens of other shootings, robberies, and assaults.  The government also alleges that the gang is heavily involved in firearms trafficking, drug trafficking, and witness intimidation.  For years, the gang has occupied and terrorized a multi-family apartment complex in East Salinas.  Their victims have included women and children, unhoused residents of a nearby encampment, actual and perceived gang rivals, and those who attempted to leave the gang lifestyle behind them.

Defendant Sergio Hernandez should be detained pending trial based on his danger to the community and risk of flight.  *See* 18 U.S.C. § 3142(e)(1).  This memo begins with a brief overview of the charged criminal enterprise, but the bulk of the memo consists of a defendant-specific analysis of Hernandez's criminal conduct and the unmitigable risk he poses to the community, including his leadership status in the gang and his encouragement of violence by others.  The government's allegations herein are supported by the Grand Jury's findings in the indictment, as well as an initial production of discovery that was provided to the defendant at his arraignment on May 2, 2024.

## II.   LEGAL STANDARDS

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A defendant's danger to the community must be supported by clear and convincing evidence, but a defendant's flight risk need only be supported by a preponderance of the evidence.  *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against

GOVERNMENT DETENTION MEMORANDUM          1
5:24-CR-00226-BLF-003

the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f). It is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

Where there is probable cause that a defendant has committed an offense for which a maximum of ten years in prison or more is prescribed in the Controlled Substances Act, courts apply a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). Under this scheme, the burden of production shifts to the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *See id.* (citation omitted).

## III.   THE ENTERPRISE: SALINAS ACOSTA PLAZA NORTEÑOS

The criminal enterprise charged in the indictment is the Salinas Acosta Plaza (SAP) Norteño criminal street gang. Originating in the 1990's in the Acosta Plaza apartment complex in East Salinas, the gang has terrorized the families and individuals living in and around the complex, claiming the area as its home turf. Four of the charged defendants (Vasquez, Ramirez, Hernandez, and Alvarez) have served as the gang's "Channel," a liaison between the street gang and the incarcerated Nuestra Familia leadership that oversees Norteño street gangs throughout the Bay Area. These Channels collect gang dues, with which they purchase firearms and narcotics for the gang to sell, and either approve or ratify criminal activity like gang shootings. Many of these shootings are targeted at perceived rival Sureño gang

GOVERNMENT DETENTION MEMORANDUM        2
5:24-CR-00226-BLF-003

members, but SAP members have also killed non-affiliated members of the community, including unhoused people who reside in the undeveloped Carr Lake area adjacent to Acosta Plaza.

As alleged in the indictment, SAP gang members have engaged in the following categories of racketeering activities:  murders, attempted murders, murder solicitation, robbery, drug trafficking, firearms trafficking, and witness retaliation and intimidation.  Detailed here are just some of the violent crimes committed in recent years by SAP members against vulnerable members of the community:

**A.      Murder and Attempted Murder on May 1, 2020**

On May 1, 2020, Salinas PD Officers were dispatched to three victims of a shooting in the homeless encampments near Carr Lake, just behind the Acosta Plaza complex.  One victim died on scene, and two additional victims survived.  The investigation revealed that approximately five subjects approached the victims and identified themselves as "Acosta Plaza," before two of the suspects shot the victims.  Salinas PD was able to identify one of the shooters as John Barriga, a documented SAP member.  One of the surviving victims picked Barriga out of a lineup and identified him as a shooter.  On August 23, 2022, Barriga pled guilty in state court to voluntary manslaughter with a gang allegation and was sentenced to 25 years in prison.  The additional suspects are still unidentified.

**B.      Murder and Attempted Murder on September 20, 2020**

On September 20, 2020, Salinas PD Officers were dispatched to two victims of a shooting in the homeless encampments near Carr Lake, just behind the Acosta Plaza complex.  One victim was pronounced dead on scene, and one additional victim survived.  The surviving victim said that four individuals had approached, asked if he was in a gang, and ordered him to take off his shirt so they could check for gang tattoos.  After accusing the victim's tattoo of being gang-related, they marched the two victims at gunpoint to a different area and shot them both in the head.

**C.      Murder on March 23, 2021**

On March 23, 2021, Salinas PD Officers were dispatched to a victim of a shooting in the homeless encampments near Carr Lake, just behind the Acosta Plaza complex.  The victim was pronounced dead on scene from multiple gunshot wounds to the chest.  Approximately 10 feet away from the victim's body, officers located a loaded magazine and several fired casings. The investigation revealed that two suspects identified themselves as police and made the victim show them his tattoos prior to shooting him.  One

GOVERNMENT DETENTION MEMORANDUM          3
5:24-CR-00226-BLF-003

witness noted that the victim was not "allowed" in the area because he was previously a gang member in El Salvador (but no longer active).  The magazine and fired cartridge casings were later processed for DNA.  Two DNA profiles were located on unspent rounds inside of the magazine, and they matched those of SAP members Ivan Barriga (currently in state custody) and Salvador Mexicano (charged here).

### D.   Attempted Murder on January 23, 2023

On January 23, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation showing 27 rounds fired in the area of 1041 Sieber Street, one block away from Acosta Plaza.  Upon arrival, officers located two intended victims, both documented Sureño gang associates.  Neither victim was hit by gunfire.  The investigation revealed that the victims got into an argument with several males in a white BMW, and the BMW followed them to Sieber Street. Minutes later, two males approached Sieber Street, from the area of Acosta Plaza, yelled "Plaza boys" and opened fire, firing 31 rounds at the victims.  The males then fled on foot, back towards Acosta Plaza. Salinas PD determined that the BMW mentioned was a white BMW associated with SAP members Jesus Saldana (currently in state custody facing a murder charge) and Jose Saldana (charged here).

### E.   Attempted Murder on April 3, 2023

On April 3, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation of nine rounds at 1036 N. Sanborn Rd. Upon arrival, officers located three fired cartridge casings in the street, and observed eight bullet strikes to the apartment complex at 1036 N. Sanborn Rd.  Officers canvassed the area for video and obtained video surveillance of a white BMW fleeing the scene just seconds after the shooting.  The BMW's license plate matched that of a white BMW associated with SAP members Jesus Saldana (currently in state custody facing a murder charge) and Jose Saldana (charged here).

### F.   Murder and Attempted Murder on May 20, 2023

On May 20, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation of 25 rounds of fully automatic gunfire near 824 Garner Avenue.  Upon arrival, they found a deceased male victim suffering from multiple gunshot wounds, a surviving male victim shot twice, as well as a female victim in a nearby apartment hit by a stray bullet.  The female victim was hit in the spine.  Her six-year-old daughter provided minimal medical attention until she was able to be transported to the hospital.  She survived but is paralyzed.  Surveillance video showed SAP member Abel Perez's vehicle near the shooting, and two

GOVERNMENT DETENTION MEMORANDUM       4
5:24-CR-00226-BLF-003

shooters running near the shooting.  Officers found two firearms, one of which was a Glock converted into a fully automatic firearm, hidden in an electrical box in Acosta Plaza.  Also, in the box, was a black hat matching the hat worn by one of the shooters with Ivan Barriga's DNA on it.  Both Barriga and Perez were later charged with homicide with gang enhancements.

**G.    Witness Intimidation from July 2023 to November 2023**

On July 12, 2023, a Molotov cocktail was thrown into 914 Acosta Plaza #97 while the family was asleep.  The family, not known to be affiliated with SAP, reported the incident to police and moved out soon after.  Around August 11, 2023, while the same unit #97 was vacant, somebody broke into the unit and vandalized it with graffiti saying "rata" (i.e., rat), "SAP," and "snitch fat fuck."  On November 13, 2023, Raul Coronel (charged here) got into an argument with the owner of unit #97 for attempting to have Coronel's car towed from unit #97's parking spot.  In the course of the argument, Coronel threatened the man, making a statement implying that what happened to the unit in July might happen again.

   

**H.    Seizure of 97 Firearms on January 18, 2024**

On January 18, 2024, Salinas PD Officers executed a search warrant at the home of SAP member Juan Perez at 918 Acosta Plaza #74.  Surveillance footage had shown suspected SAP members running to and from this apartment around the time of several recent shootings, leading law enforcement to believe that it was used by SAP in their violent activities.  Inside, officers found 97 handguns, shotguns, and rifles.



GOVERNMENT DETENTION MEMORANDUM    5
5:24-CR-00226-BLF-003

## IV.    ARGUMENT

Hernandez was the SAP channel from the mid-2010s up until late 2022 when he was arrested on other state charges.  During his long tenure, he encouraged and ordered violence and was personally involved in firearms trafficking and drug trafficking.  He faces a rebuttable presumption in favor of detention based on his drug trafficking activity, and there is no condition or combination of conditions that can reasonably assure his appearance or the safety of the community.

### A.    Danger to the Community

#### 1.    *Hernandez has a long association with SAP*

Hernandez is a longtime SAP member.  He has a large "SAP" tattoo down his left arm, and a large "900 BLK" tattoo across his stomach (a reference to the block of Acosta Plaza where the gang is based). His Instagram ("armanihernandez99," which also includes a reference to the 900 block) shows several recent photographs of Hernandez with other SAP gang members (e.g., co-defendants Jose Mexicano and Juan Alvarez), and flashing gang signs (e.g., "P" for Plaza).

  

#### 2.    *Hernandez encouraged violence as a longtime channel/leader of the gang*

Hernandez served as the gang's channel for most of the past decade, making him one of the most culpable of the defendants.  As the channel, it was Hernandez's job to oversee all actions taken by the gang on the street and to decree who was or was not a certified member of the gang.  He was also the primary conduit to gang members in custody.  For example, on July 19, 2022, former channel and co-

GOVERNMENT DETENTION MEMORANDUM          6
5:24-CR-00226-BLF-003

defendant Gil Vasquez (while incarcerated) asked Hernandez for "a roster of all homies out in the street claiming to be from our hood" in order to prevent fakers from representing the gang without permission. One day later, on July 20, Hernandez messaged a group of gang members and said, "hood meeting next Sunday…I will be getting at you guys…in a couple days on time and place…let everyone you talk to frm hood mandatory meet," and added that "no names or # should be given out yo anyone."   Other communications also showed Hernandez supporting incarcerated members while in custody.   For example, he told John Barriga (incarcerated for murder) that he was "actually trying to gathers some money so we can send [a phone] to all the homies [in custody]."   Other messages ("filters") show Hernandez passing information between gang members in custody and those out on the street.

As the channel, another one of his primary duties was the collection of gang dues.  For example, on November 3, 2022, he messaged a group saying, "any o e that has not payed the monthly in the past 2 to 3 months need to pay asap."  That money would be used to pay dues to the Monterey County Regiment of Norteños, or to purchase firearms and drugs for use by the gang.  Hernandez conveniently described his own role in a series of messages sent to the Monterey County Regiment.  On October 8, 2022, he said, "Im the hood channel and try to make sure the hood is doing what they nee to."  On October 14, 2022, he said, "I am not hustling im am my hood channel, all contributions were going to smiley..I also owe shotgun 3,400, I have payed 1100 of it and owe 2300..and also barrowed a toy [i.e., firearm] and still have it."  Later, he submitted a formal "incident report"—a surprisingly robust reporting process through which the Regiment is made aware of and controls the activities of those below them.  In this report, Hernandez is responded to accusations of financial impropriety.  He wrote:

> I was requested by proper channel to write this depth IR... Sergio Hernandez aka mono 34. 5/5/1988 FRM. SALINAS ACOSTA PLAZA. So between the months of June and November received a zip of coke for 800 a zip. After running low of product I received more then we came to and agreement because I was paying my debts around November black left to yuma az. And I lost communication for a bit until he came back frm yuma az. I owed 3400 and I payed 1100 of it and still owe 2300... between that time I received a gun for my hood that we used and and I replaced it and gave it possession. C/R MONO.

This message also illustrates another central role of the SAP channel:  obtaining firearms for the gang to use in shootings.  He could not be more explicit:  "I received a gun for my hood that we used."

By virtue of both his long tenure and his family connections to other members of the gang,

GOVERNMENT DETENTION MEMORANDUM       7
5:24-CR-00226-BLF-003

Hernandez has a great deal of sway over his subordinates.  On August 3, 2022, co-defendant Gil Vasquez—the incarcerated channel—even scolded Hernandez for having members being more loyal to him (Hernandez) than to the hood (SAP).  Hernandez has used his powerful sway over others in the gang to encourage violence.  For example, his order—controversial even within the gang—that gang members may target the transient population in the undeveloped Carr Lake Area (adjacent to Acosta Plaza), instead of just the traditional targets like dropouts and rival Sureños, was followed by years of killings, several of which are listed in the government's indictment.  Hernandez has also ordered gang beatings of SAP members who disrespected his authority, and planned retaliatory attacks after SAP gang members were "jumped" (e.g., on May 15, 2022, co-defendant Juan Alvarez told co-defendant Gil Vasquez over Instagram that hewas "pulling up" to Hernandez's house with a "thang" while saying that "run backs is mando" (i.e., we must retaliate)).  Furthermore, Instagram records on November 15, 2022, show Hernandez commiserating with another SAP member about how the modern generation is soft, stating: "yeah bro kids thet were not even like us and actually had a good trying to be hard…. Times have changed everything watered-down."  True to his word, Hernandez appears to have done his best to restore old standards of violence.

Particularly concerning is Hernandez's clear desire to identify—and presumably retaliate against—any government cooperators or informants.  In an Instagram conversation between jaime.fitness and Hernandez, Hernandez discusses how when another gang member was "locked up[,] they hit his pad about a month ago."  Jaime.fitness asked if "someone snitching out their or what."  Hernandez responded that several gang members (including himself and co-defendant Gustavo Garcia) have been "hit" and agreed that snitching is a problem ("I knw bro").  Jaime.fitness said, "dam someone from ur hood u think is talking since the homies are all from ur hood."  Hernandez responded, "yeah I think it [name redacted] . . . he got hit first then me and after that everyone been getting hit."  Similarly, in a different conversation between Hernandez and talib4ngod, Hernandez said, "some told on him said he had hella drugs and he was a drug dealer . . . someone."  Talib4ngod said, "we gotta figure this out . . . too many coincidences bro," to which Hernandez responded, "I think he knws."  In SAP, as with many other gangs, dropping out of the gang is already an offense punishable by death; cooperating with the police is even more of a sin.

GOVERNMENT DETENTION MEMORANDUM          8
5:24-CR-00226-BLF-003

### 3. *Hernandez is personally involved in drug trafficking*

On December 14, 2022, SPD executed a search warrant on Hernandez, his residence, and his truck. In his truck, they found 122 M30 pills in the pocket of his work shirt. In his bedroom, they found 1.3 grams of cocaine, a digital scale with cocaine residue, and an extended 9mm magazine. In another bedroom—which contained indicia linked to Hernandez—they found a loaded 9mm Taurus handgun. Hernandez admitted to possessing the extended magazine and initially denied possessing the handgun but later admitted that "anything found was his" and that the gun was for home protection. He also admitted to popping pills and using cocaine occasionally.

Instagram records from before and after his December 2022 arrest corroborate his drug trafficking. For example, on August 28, 2022, he agreed to help another individual sell a "boat" of "blues" (i.e., 1000 M30 pills). On October 12, 2022, he messaged someone: "I need a zip [i.e., ounce] how much 700." On November 13, 2022, he offered to sell "250 for a zip" and "650 for black." Then, even after his arrest, in March 2023, he offers to sell "qt 3 half 475 zip 9" (i.e., $300 for ¼ ounce of cocaine, $475 for ½ ounce, $900 for ounce). On October 10, 2023, he asked another individual, "how much you want," to which the response was, "front me a dubbie." On October 19, 2023, in a different chat about drugs, Hernandez said: "I got the same" and then sent another individual a video of cocaine in a bag.

### 4. *Hernandez is personally involved in firearms trafficking*

The SAP channel is historically responsible for firearms trafficking for the gang. As mentioned above, gang dues are used to, among other things, purchase firearms for use in violent crimes. The channel is also responsible for disposing (or directing the disposal of) firearms that had been used in violent crimes, just as Hernandez alluded to in his incident report listed above: "I received a gun for my hood that we used and and I replaced it." Hernandez was involved in all aspects of this trafficking. For example, on June 23, 2022, in a conversation with another individual, Hernandez offered to pay $500 for a Glock 19 "ghost," saying, "I need one." On September 9, 2022, in a conversation with the same individual, Hernandez stated: "cmon get me one bro personal good price…for my house 45 40 or a 9." On December 14, 2022, SPD searched Hernandez's house and found the extended 9mm magazine and the black Taurus 9mm handgun (described earlier). On March 6, 2023, even after his December 2022 arrest for having a firearm and an extended magazine, SAP member Oscar Benitez told Hernandez that he has a "9 for sale"

GOVERNMENT DETENTION MEMORANDUM    9
5:24-CR-00226-BLF-003

and Hernandez responded, "how much" and "let me ask."

5.     *No condition or combination of conditions can ensure the safety of the community*

Hernandez is a longtime SAP member and leader.  He is involved in nearly all SAP "business" including drug trafficking, firearms trafficking, and encouraging acts of violence.  He was already committed to rooting out potential informants *before* a federal indictment was brought against 11 members of his gang, and those efforts will only intensify and pose a significant danger to the public should he be released.  Considering his long history as the leader of a violent gang, his many efforts to encourage violence, and his personal involvement in firearms and drug trafficking, he cannot overcome the presumption that no combination of conditions can ensure the safety of any other person and the community.

**B.     Risk of Flight**

Hernandez faces a potentially lengthy sentence in a federal racketeering case—far longer than any sentence he has previously served—which creates a strong incentive for him to flee.  *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee").  As a former channel, he also has access to a larger Norteño network that could facilitate his flight.  He cannot overcome the presumption that no combination of conditions can ensure his return to court as ordered if he were to be released.

**V.     CONCLUSION**

Given the lack of conditions that can reasonably assure the safety of the community, or ensure his appearance at future court hearings, the government respectfully requests that the defendant be detained.

DATED:  May 12, 2024                                    Respectfully submitted,

                                                       ISMAIL J. RAMSEY
                                                       United States Attorney


                                                       /s/
                                                       LEIF DAUTCH
                                                       GEORGE O. HAGEMAN
                                                       AMANI S. FLOYD
                                                       Assistant United States Attorneys

GOVERNMENT DETENTION MEMORANDUM          10
5:24-CR-00226-BLF-003