ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
GEORGE O. HAGEMAN (CABN 332457)
AMANI S. FLOYD (CABN 301506)
Assistant United States Attorneys

       450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
       Telephone: (415) 436-7534
       Fax: (415) 436-7234
       Leif.Dautch@usdoj.gov
       George.Hageman@usdoj.gov
       Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 5:24-CR-00226-BLF-002 |
| Plaintiff, | UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION |
| v. | FOR PRETRIAL DETENTION |
| RIGOBERTO RAMIREZ Jr. aka "Scooby," | Date:    May 23, 2024 (Detention Hearing) |
| Defendant. | Time:    1:00 p.m. |
| | Court:   Honorable Nathanael Cousins |

GOVERNMENT DETENTION MEMORANDUM
5:24-CR-00226-BLF-002

## I.    **INTRODUCTION**

In an indictment unsealed on May 2, 2024, the Grand Jury charged 11 members of the Salinas Acosta Plaza (SAP) Norteño criminal street gang with Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).  As outlined in the 37 overt acts listed in the indictment, the government alleges that this violent street gang is responsible for at least eight murders and ten attempted murders, as well as dozens of other shootings, robberies, and assaults.  The government also alleges that the gang is heavily involved in firearms trafficking, drug trafficking, and witness intimidation.  For years, the gang has occupied and terrorized a multi-family apartment complex in East Salinas.  Their victims have included women and children, unhoused residents of a nearby encampment, actual and perceived gang rivals, and those who attempted to leave the gang lifestyle behind them.

Defendant Rigoberto Ramirez should be detained pending trial based on his danger to the community and risk of flight.  *See* 18 U.S.C. § 3142(e)(1).  He is currently still serving a term of federal supervised release related to previous drug and firearm convictions, *see generally* 5:11-CR-00661-RMW, and thus bears the burden of establishing by clear and convincing evidence that he will not flee or pose a danger to the community or any other person.  This memo begins with a brief overview of the charged criminal enterprise, but the bulk of the memo consists of a defendant-specific analysis of Ramirez's criminal conduct and the unmitigable risk he poses to the community, including his leadership status within the gang and his prior acts of violence.  The government's allegations herein are supported by the Grand Jury's findings in the indictment, as well as an initial production of discovery that was provided to the defendant at his arraignment on May 2, 2024.

## II.    **LEGAL STANDARDS**

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  Typically, it is the government's burden to prove a defendant's danger to the community by clear and convincing evidence and to prove a defendant's flight risk by a preponderance of the evidence.  *Id.*

GOVERNMENT DETENTION MEMORANDUM        1
5:24-CR-00226-BLF-002

However, where, as here, a defendant is on federal supervised release, it is the defendant who must prove by clear and convincing evidence that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant. *See* Fed. R. Crim. P. 32.1(a)(6); 18 U.S.C. § 3143(a)(1).

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

The rules of evidence do not apply at a detention hearing. 18 U.S.C. § 3142(f). It is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence, and other relevant factors. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

## III.    THE ENTERPRISE: SALINAS ACOSTA PLAZA NORTEÑOS

The criminal enterprise charged in the indictment is the Salinas Acosta Plaza (SAP) Norteño criminal street gang. Originating in the 1990's in the Acosta Plaza apartment complex in East Salinas, the gang has terrorized the families and individuals living in and around the complex, claiming the area as its home turf. Four of the charged defendants (Vasquez, Ramirez, Hernandez, and Alvarez) have served as the gang's "Channel," a liaison between the street gang and the incarcerated Nuestra Familia leadership that oversees Norteño street gangs throughout the Bay Area. These Channels collect gang dues, with which they purchase firearms and narcotics for the gang to sell, and either approve or ratify criminal activity like gang shootings. Many of these shootings are targeted at perceived rival Sureño gang members, but SAP members have also killed non-affiliated members of the community, including unhoused people who reside in the undeveloped Carr Lake area adjacent to Acosta Plaza.

As alleged in the indictment, SAP gang members have engaged in the following categories of racketeering activities:  murders, attempted murders, murder solicitation, robbery, drug trafficking, firearms trafficking, and witness retaliation and intimidation.  Detailed here are just some of the violent crimes committed in recent years by SAP members against vulnerable members of the community:

### A.     Murder and Attempted Murder on May 1, 2020

On May 1, 2020, Salinas PD Officers were dispatched to three victims of a shooting in the homeless encampments near Carr Lake, just behind the Acosta Plaza complex.  One victim died on scene, and two additional victims survived.  The investigation revealed that approximately five subjects approached the victims and identified themselves as "Acosta Plaza," before two of the suspects shot the victims.  Salinas PD was able to identify one of the shooters as John Barriga, a documented SAP member.  One of the surviving victims picked Barriga out of a lineup and identified him as a shooter.  On August 23, 2022, Barriga pled guilty in state court to voluntary manslaughter with a gang allegation and was sentenced to 25 years in prison.  The additional suspects are still unidentified.

### B.     Murder and Attempted Murder on September 20, 2020

On September 20, 2020, Salinas PD Officers were dispatched to two victims of a shooting in the homeless encampments near Carr Lake, just behind the Acosta Plaza complex.  One victim was pronounced dead on scene, and one additional victim survived.  The surviving victim said that four individuals had approached, asked if he was in a gang, and ordered him to take off his shirt so they could check for gang tattoos.  After accusing the victim's tattoo of being gang-related, they marched the two victims at gunpoint to a different area and shot them both in the head.

### C.     Murder on March 23, 2021

On March 23, 2021, Salinas PD Officers were dispatched to a victim of a shooting in the homeless encampments near Carr Lake, just behind the Acosta Plaza complex.  The victim was pronounced dead on scene from multiple gunshot wounds to the chest.  Approximately 10 feet away from the victim's body, officers located a loaded magazine and several fired casings.  The investigation revealed that two suspects identified themselves as police and made the victim show them his tattoos prior to shooting him.  One witness noted that the victim was not "allowed" in the area because he was previously a gang member in El Salvador (but no longer active).  The magazine and fired cartridge casings were later processed for

GOVERNMENT DETENTION MEMORANDUM      3
5:24-CR-00226-BLF-002

DNA. Two DNA profiles were located on unspent rounds inside of the magazine, and they matched those of SAP members Ivan Barriga (currently in state custody) and Salvador Mexicano (charged here).

**D.      Attempted Murder on January 23, 2023**

On January 23, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation showing 27 rounds fired in the area of 1041 Sieber Street, one block away from Acosta Plaza. Upon arrival, officers located two intended victims, both documented Sureño gang associates. Neither victim was hit by gunfire. The investigation revealed that the victims got into an argument with several males in a white BMW, and the BMW followed them to Sieber Street. Minutes later, two males approached Sieber Street, from the area of Acosta Plaza, yelled "Plaza boys" and opened fire, firing 31 rounds at the victims. The males then fled on foot, back towards Acosta Plaza. Salinas PD determined that the BMW mentioned was a white BMW associated with SAP members Jesus Saldana (currently in state custody facing a murder charge) and Jose Saldana (charged here).

**E.      Attempted Murder on April 3, 2023**

On April 3, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation of nine rounds at 1036 N. Sanborn Rd. Upon arrival, officers located three fired cartridge casings in the street, and observed eight bullet strikes to the apartment complex at 1036 N. Sanborn Rd. Officers canvassed the area for video and obtained video surveillance of a white BMW fleeing the scene just seconds after the shooting. The BMW's license plate matched that of a white BMW associated with SAP members Jesus Saldana (currently in state custody facing a murder charge) and Jose Saldana (charged here).

**F.      Murder and Attempted Murder on May 20, 2023**

On May 20, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation of 25 rounds of fully automatic gunfire near 824 Garner Avenue. Upon arrival, they found a deceased male victim suffering from multiple gunshot wounds, a surviving male victim shot twice, as well as a female victim in a nearby apartment hit by a stray bullet. The female victim was hit in the spine. Her six-year-old daughter provided minimal medical attention until she was able to be transported to the hospital. She survived but is paralyzed. Surveillance video showed SAP member Abel Perez's vehicle near the shooting, and two shooters running near the shooting. Officers found two firearms, one of which was a Glock converted into a fully automatic firearm, hidden in an electrical box in Acosta Plaza. Also, in the box, was a black

hat matching the hat worn by one of the shooters with Ivan Barriga's DNA on it. Both Barriga and Perez were later charged with homicide with gang enhancements.

### G.   Attempted Murder on June 24, 2023

On June 24, 2023, Salinas PD Officers were dispatched to a ShotSpotter activation for a single shot at 916 Acosta Plaza #17. The victim reported that he and his nephew were hanging out near the apartment when a white sedan approached. The driver stayed inside, while a male and a female got out. The male asked if they wanted to buy "product" (likely cocaine) and gave a free sample. The victim claimed it was just flour. An argument ensued. The male brandished a firearm and fired one round at the victim's face, then kicked him, returned to the car, and fled. At the hospital, doctors were unable to determine conclusively whether the injury to the victim's face was caused by a bullet strike or by a pistol-whipping or other blunt force trauma. Instagram records show that Raul Coronel (charged in this indictment) sent SAP member Marco Sanchez a/k/a "Cooks" a screenshot of a news article about the shooting the next day. Coronel said: "making it seem like you active cooks" and "ur good mann," to which Sanchez responded: "hahaha" and "if I wanted them dead they would have been." Coronel responded: "not the paisano" and "lol." Call detail records put them both in the area at the time.

### H.   Witness Intimidation from July 2023 to November 2023

On July 12, 2023, a Molotov cocktail was thrown into 914 Acosta Plaza #97 while the family was asleep. The family, not known to be affiliated with SAP, reported the incident to police and moved out soon after. Around August 11, 2023, while the same unit #97 was vacant, somebody broke into the unit and vandalized it with graffiti saying "rata" (i.e., rat), "SAP," and "snitch fat fuck." On November 13, 2023, Raul Coronel (charged here) got into an argument with the owner of unit #97 for attempting to have Coronel's car towed from unit #97's parking spot. In the course of the argument, Coronel threatened the man, making a statement implying that what happened to the unit in July might happen again.

//

//

//

//

//







### I.    <u>Seizure of 97 Firearms on January 18, 2024</u>

On January 18, 2024, Salinas PD Officers executed a search warrant at the home of SAP member Juan Perez at 918 Acosta Plaza #74.  Surveillance footage had shown suspected SAP members running to and from this apartment around the time of several recent shootings, leading law enforcement to believe that it was used by SAP in their violent activities.  Inside, officers found 97 handguns, shotguns, and rifles.



## IV.    ARGUMENT

Ramirez is a former SAP channel who was (and still is) on federal supervised release during almost the entire period described in the indictment.  He has prior federal convictions for drug trafficking and firearm possession and continues to be involved in acts of violence as a leader of the gang.  As such, he cannot show by clear and convincing evidence that he is neither a danger to the community nor a risk of flight, and therefore he should be detained pending trial.

### A.    Danger to the Community

#### 1.    *Ramirez has a long association with SAP*

Ramirez is a longtime SAP member.  He formally registered as a Norteño gang member with the Salinas Police Department (SPD) on November 25, 2009, as required by his January 2009 felony convictions for participation in a criminal street gang and carrying a concealed weapon on his person.  In a culture where tattoos are bestowed for loyalty to and violent acts on behalf of the gang, Ramirez has plenty: an "SAP" across his chest, a "P" on his right forearm, 4 dots on his left hand (a common Norteño number), and "900" on his right upper arm.  On his Instagram, he can be seen throwing up gang signs (e.g., "A" and "P"), wearing SAP-affiliated clothing (e.g., an Atlanta Braves hat with "A" and a Pittsburgh Pirates hat with "P"), and associating with co-defendant SAP members including Jose Mexicano, Salvador Mexicano, and Bertin Medrano.

  

2.    *Ramirez is currently on federal supervised release*

Ramirez is a federal felon. On November 8, 2012, he was sentenced in the Northern District of California to 60 months in prison followed by 10 years of supervised release for three counts: (1) possession with intent to distribute and distribution of approximately 14 grams of methamphetamine on April 14, 2011; (2) possession with the intent to distribute and distribution of approximately 29.5 grams of methamphetamine on April 21, 2011; and (3) being a felon in possession of a firearm on May 19, 2011. Prior to his federal sentence, he had previously been convicted in state court of felonious carrying of a concealed firearm (with a gang enhancement and while on state probation) in January 2009, which resulted in his probation being revoked and him serving a custodial sentence.

Ramirez commenced his 10-year term of federal supervised release on March 14, 2016. The terms stated, among other things, that he shall not "associate with any member of the Norteno gang" and "shall have no connection whatsoever with the Nuestra Familia or any other gang." *See* 5:11-CR-00661-RMW, Dkt. 26. The condition adds that "if he is found to be in the company of such individuals, or wearing the clothing, colors, or insignia of the Nortenos, or any other gang, the court will presume that the association was for the purpose of participating in gang activities." *Id.* As with his previous term of state probation, Ramirez immediately failed to comply. Besides the clear gang associations depicted above, he committed numerous drug-related violations.

Furthermore, just two months after the start of his term of supervised release, the Court took judicial notice of a presumptive positive test for cocaine in violation of the terms of his supervised release. In March 2021, the Court again took judicial notice of Ramirez's admission of marijuana use in violation of the terms of his supervised release. And, again, in September 2021, the Court again took judicial notice of Ramirez's positive test for marijuana in violation of the terms of his supervised release.

3.    *Ramirez is a gang leader who encourages violence and firearms trafficking*

Ramirez is a channel (leader) of the gang with power and influence over the gang's junior members. He encourages violence. Witnesses report that he has ordered at least three murders and arranged for the weapons to do so. He also seemingly participates in violence himself: On February 5, 2023, he asked another over Instagram if he has had any recent "licks" (note: slang for robberies). On February 17, 2023, he told SAP member Ivan Barriga, "some j cat selling a wammer let's try n come up

GOVERNMENT DETENTION MEMORANDUM    8
5:24-CR-00226-BLF-002

on it." On March 20, 2023, he told Barriga, "who can we rob . . . asap . . . we need a lick today . . . tonight will be perfect." On March 25, 2023, he asked someone, "I need a come up bro u dnt kno any licks?", followed by "jewelry chains money guns anything." He told another, "u have to pull a lick carnal . . . at a store." On March 28, 2023, he told Barriga, "let's mob in morning g," to which Barriga responds, "U can swoop didn't bring my woo" (note: slang for firearm). On April 14, 2023, he asked someone, "I'm search sum licks upp asap."

Ramirez also encourages firearms trafficking and participates in the purchases himself. For example, on March 31, 2023, he asked someone to bring him Glocks from Arizona: "bring me glocks ?? from az." Later, he explained that Glocks are $1100 in California but only $450-500 in Arizona and expressed an interest in interstate arbitrage. One month later, on April 26, 2023, Ramirez told SAP member Ivan Barriga that "[he has] a connect with flocks in a box 6 or 7 bills each," to which Barriga responded that he is interested in a trade. This conversation took place on the same day that Ivan Barriga and other SAP members shot a Norteño dropout as he was walking through Acosta Plaza; the gang is known for disposing or trading away firearms used in shootings.

Ramirez also appears to be involved in another line of SAP business: drug trafficking. On December 21, 2022, for example, co-defendant Gustavo Garcia asked Ramirez for 100 "blues" (i.e., fentanyl-laced M30 pills). Ramirez told Gustavo Garcia to come to his residence, presumably to provide him with the pills.

4.    *No condition or combination of conditions can ensure the safety of the community*

Ramirez is a longtime SAP member and leader. He has been performing this role despite prior federal convictions for drug trafficking and firearms possession, and despite being on federal supervised release (with a condition prohibiting gang contact) throughout almost the entire time period covered by the indictment. He also actively encourages violence and gets personally involved in the criminal acts of the gang. Considering his long history of gang involvement, his leadership status within a violent gang, his failure to abide by prior court orders/prohibitions, and his on-going criminal activity while under court supervision, the government submits that Ramirez cannot show by clear and convincing evidence that he is not a danger to any other person and the community.

**B.    Risk of Flight**

Ramirez has proven that he cannot abide by court orders.  He became a state felon after his 2009 concealed carry conviction, then a federal felon after his 2012 federal methamphetamine trafficking and firearm possession convictions, then a federal supervised release violator many times over by possessing firearms, possessing drugs, encouraging and/or committing acts of violence, and generally associating with SAP as not just a mere member but also its channel/leader.  Additionally, he faces a potentially lengthy sentence in a federal racketeering case—likely far longer than any sentence he has previously served—which creates a strong incentive for him to flee. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (strong evidence of guilt "makes it more likely that he will flee").  As such, the government submits that Ramirez cannot show by clear and convincing evidence that he is not a risk of flight if released.

## V.    CONCLUSION

Given the fact that Ramirez is on federal supervised release and cannot meet his burden, he must be detained pursuant to Fed. R. Crim. P. 32.1(a)(6) and 18 U.S.C. § 3143(a)(1).  As such, the government respectfully requests that the defendant be detained pending trial.

DATED:  May 21, 2024                                     Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_/s/_____
LEIF DAUTCH
GEORGE O. HAGEMAN
AMANI S. FLOYD
Assistant United States Attorneys

GOVERNMENT DETENTION MEMORANDUM         10
5:24-CR-00226-BLF-002