GAIL R. SHIFMAN, SBN 147334
Law Office of Gail Shifman
2431 Fillmore Street
San Francisco, CA 94115
Phone:  415/551-1500
Email:  gail@shifmangroup.com
*Appearing for Defendant RAUL C. SUAREZ*

MICHAEL N. BURT, SBN 83377
1000 Brannan Street, Suite 400
San Francisco, CA 94103
Phone: 415/522-1508
Email: mb@michaelburtlaw.com
*Appearing for Defendant RAUL C. SUAREZ*

RICHARD ALAN TAMOR, SBN 176529
311 Oak Street, Suite 108
Oakland, CA 94607
Phone: 415/655-1969
Email: RTamor@Tamorlaw.com
*Appearing for Defendant LORENZO GARCIA, JR.*

RICHARD G. NOVAK, SBN 149303
P. O. Box 5549
Berkeley, CA 94705
Phone: 626/578 1175
Email: Richard@RGNLaw.com
*Appearing for Defendant LORENZO GARCIA, JR.*

NICOLE E. LAMBROS, SBN 215524
600 Allerton Street, Suite 200
Redwood City, CA 94063
Phone: 415/596-4647
Email: n.e.lambros@gmail.com
*Appearing for Defendant JOSE SALDANA*

JOHN T. PHILIPSBORN,  SBN 83944
507 Polk Street, Suite 350
San Francisco, CA 94102
Phone: 415/771-3801
Email: JPhilipsbo@aol.com
*Appearing for Defendant JOSE SALDANA*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAUL CORONEL SUAREZ, LORENZO GARCIA, JR., JOSE SALDANA,<br><br>Defendants. | **Case No. 5:24-CR-00226-BLF**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CASE MANAGEMENT AND DISCOVERY ORDER TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING THE DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES**<br><br>Date:  August 15, 2025<br><br>Time: 1:00 p.m.<br><br>COURT:  MAGISTRATE JUDGE NATHANAEL COUSINS |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................... 1

    A.     The Question Of The Death Penalty Still Looms In This Case .................... 4

II.    STATEMENT OF THE CASE .......................................................................... 5

III.   ARGUMENT AND AUTHORITIES ............................................................... 6

    A.     Brief Summary Of Discovery Provided To The Defense ............................ 7

    B.     A Pretrial Discovery Order in A Case Like This Should Be Wide Ranging and Provide for Prompt and Timely Disclosures ........................................ 9

    C.     Federal Rule of Criminal Procedure 12 Entitles the Defense to Make a Request for the Government That it Provide Notice of Its Intent to Use Evidence in Its Case in Chief That Any Accused May Be Entitled to Discover Under Rule 16 ............................................................................... 9

    D.     Federal Rule of Criminal Procedure 16 Requires Production of the Defendant's Statements .......................................................................... 10

    E.     FRCP 16 and the Defendant's Criminal Record ....................................... 10

    F.     Production of Physical and Documentary Evidence .................................. 10

    G.     Disclosure of Physical or Mental Examinations ....................................... 10

    H.     Evidence of Crimes, Wrongs, or Acts (FRE 404(b)) ................................ 11

    I.     Jencks Act Statements, Including Those That Contain Exculpatory or Impeaching Evidence ............................................................................ 11

    J.     Information About Non-Testifying Witnesses .......................................... 12

    K.     FRCP 26.2 Statements .............................................................................. 13

    L.     Timely Disclosure of *Brady* and *Giglio* Evidence--Impeachment ............. 13

    M.     Promises of Consideration Made to Prosecution Witnesses ...................... 14

    N.     The Government Should Identify and Disclose All Prior Statements of Witnesses Bearing on the Issues in the Case ........................................ 15

MEMO OF Ps AND As IN SUPPORT OF MOTION FOR ORDER FOR CASE MANAGEMENT PLANAND DISCOVERY TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES

O.      Reports of Misconduct of Officers Working on Case Investigation........... 15

P.      Given the Current Record in This Case That Includes the Government's Arguments That It Has the Prerogative to Change the Charges and To Seek the Penalty of Its Choice, The Defense Must Prepare Accordingly... 16

IV.     **CONCLUSION** ....................................................................................................... **21**

MEMO OF Ps AND As IN SUPPORT OF MOTION FOR ORDER FOR CASE MANAGEMENT PLANAND DISCOVERY TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Andrus v. Texas*,
    590 U.S. 806; 140 S.Ct. 1875 ................................................................................ 19

*Brady v. Maryland,*
    373 U.S. 83 .......................................................................................... 12, 13, 16, 20

*Davis v. Alaska*,
    415 U.S. 308 (1974) ............................................................................................. 14

*Giglio v. United States, supra*,
    405 U.S. 150 ............................................................................................ 12, 14, 16

*Kyles v. Whitley*,
    514 U.S. 419 (1995) ............................................................................................. 14

*Mesarosh v. United States*,
    352 U.S. 1 (1956) ................................................................................................. 15

*Rompilla v. Beard*,
    545 U.S. 374 (2005) ............................................................................................. 19

*Sawyer v. Whitley*,
    505 U.S. 333 (1992) ............................................................................................. 18

*Strickland v. Washington*,
    466 U.S. 668 (1984) ............................................................................................. 18

*United States v. Agurs*,
    427 U.S. 97 (1976) ............................................................................................... 13

*United States v. Alvarez*,
    358 F.3d 1194 (9th Cir., 2004) ............................................................................ 12

*United States v. Bernal-Obeso*,
    989 F.2d 331 (9th Cir., 1993) .............................................................................. 15

*United States v. Brooke*,
    4 F.3d, 1480 (9th Cir., 1993) ............................................................................... 14

*United States v. Cadet*,
    727 F.2d 1453 (9th Cir., 1984) ................................................................ 12, 13, 16

MEMO OF Ps AND As IN SUPPORT OF MOTION FOR ORDER FOR CASE MANAGEMENT PLANAND DISCOVERY TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES

*United States v. Cerna*,
  633 F.Supp.2d, 1053 (N.D. Cal., 2009) ..................................................................... 7

*United States v. Chisum*,
  436 F.2d, 645 (9th Cir., 1971) ................................................................................. 15

*United States v. Cole*,
  617 F.2d, 151 (5th Cir., 1980), *cert. denied*, 452 U.S. 918 (1981) ....................... 14

*United States v. Delatorre*,
  438 F. Supp 2d. 892 (N.D., Ill 2006) ....................................................................... 20

*United States v. Fernandez*,
  231 F.3d, 1240 (9th Cir., 2000) ............................................................................... 19

*United States v. Furrow*,
  100 F.Supp.2d, 1170 (C.D. Cal., 2000) ................................................................... 19

*United States v. Henthorn*,
  931 F.2d 29 (9th Cir., 1991) ..................................................................................... 16

*United States v. Hibler*,
  463 F.2d, 455 (9th Cir., 1972) ................................................................................. 13

*United States v. Jones*,
  612 F.2d 453 (9th Cir., 1979) .............................................................................. 12, 19

*United States v. Leake*,
  642 F.3d 715 (4th Cir., 1981) ................................................................................... 14

*United States v. Lehman*,
  756 F. 2d 725 (9th Cir, 1985) ................................................................................... 20

*United States v. Miramon*,
  443 F.2d 361 (9th Cir., 1971) ................................................................................... 15

*United States v. Ortiz*,
  Case No. 12-CR-00119-SI, 2013 U.S. Dist LEXIS 16218 ...................................... 7

*United States v. Perez*,
  222 F. Supp. 2d. 164 (D. Conn., 2002) .................................................................... 19

*United States v. Shaffer*,
  789 F.2d 682 (9th Cir., 1986) ................................................................................... 15

MEMO OF Ps AND As IN SUPPORT OF MOTION FOR ORDER FOR CASE MANAGEMENT PLANAND DISCOVERY TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES

*United States v. Sudikoff*,
    36 F.Supp.2d, 1196 (C.D. Cal., 1999)..................................................................... 15

*United States v. W.R. Grace*,
    526 F.3d, 499 (9th Circuit, 2008)...................................................................... 6, 12

*United States v. Walker*,
    Case No. 17-CR-00570-EMC-1, 2018 U.S. Dist LEXIS 102101 ............................. 9

*Wiggins v. Smith*,
    539 U.S. 510  (2003) ..................................................................................... 18, 19

**Statutes**

18 U.S.C. section 1962(d) ...................................................................................... 5

18 U.S.C. section 3591 ........................................................................................ 17

18 U.S.C. section 3592 ........................................................................................ 17

**Other Authorities**

Jencks Act, 18 U.S.C. section 3500 ................................................................. 11, 12

**Rules**

Federal Rules of Evidence............................................................................... 10, 11

FRCP 12 ........................................................................................................... 9

FRCP 16 .......................................................................................................... 10

FRCP 26.2 ........................................................................................................ 13

Rules of Professional Conduct, Rule 3.8............................................................... 9

**Treatises**

ABA 'Death Penalty Guidelines' ......................................................................... 18

ABA *Guidelines for the Appointment and Performance
    of Defense Counsel in Death Penalty Cases* (2003, with
    Mitigation Supplement in 2008) ................................................................... 18

ABA *Standards for Criminal Justice*

("The Defense Function") ................................................................................ 18

Goodpaster, *The Trial for Life:  Effective Assistance of Counsel in Death Penalty Cases*, 58 NYU Law Review, 299 (1983) .................................. 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION.

Mr. Garcia, Mr. Saldana and Mr. Suarez (referenced throughout as 'the accused', 'the  defense') now face the possibility that the Government is moving this case from a certified non-capital case involving allegations of street gang acts of violence (including homicides) into a case in which the death penalty will  be sought.  The accused's initially appointed counsel requested access to discovery beginning in May, 2024 and the Government was delivering discovery 'Productions' according to its chosen approach to case organization. More than 15 months into the case, the accused are still waiting for complete disclosure of discovery covering charged racketeering acts, and overt acts charged in support of the conspiracy, which include 2 murders which are specified as the basis for special sentencing factor allegations in paragraph 16 at page 11 of the Indictment. At present the accused face life sentences as a result of the sentencing factor allegation. Given that the Government is reconsidering whether to pursue the death penalty, the 2 murders—and other acts of violence alleged—are matters that defense counsel need to be well informed about, so as to investigate, conduct pretrial litigation, and prepare for trial.

As of July 21, 2025, defense counsel for the accused have transmitted discovery letters to the Government explaining that requested discovery is still undelivered.  (*See* letters appended to supporting declaration of counsel, from attorney Nicole Lambros.) The defense has met and conferred with Supervising AUSA Leif Dautch and with AUSA George Hageman and explained what information it believes that it should receive in response to discovery requests, given the nature of the charges.  The Government has explained that additional information is on the way. The defense is still waiting for Federal Agency (DEA, BATF, Immigration) reports of investigation; while there is information about firearms evidence being inventoried and in certain instances submitted for NIBIN processing, there is no firearms identification information from qualified firearms experts from the FBI or BATF, or from California's DOJ or even from local

1

police labs.  There is mention of firearms evidence being processed for DNA, but no Lab work is reported to have been done to get pertinent results.  (These matters are specific to the December 2, 2023, murder attributed to Mr. Suarez and Mr. Saldana.)  Additionally, the accused have been informed by the government that there are additional acts including shootings and homicides where discovery remains unproduced.

The defense has requested that the Government complete disclosure of incomplete batches of local investigation reports.  Some local police Body Camera Videos have been made available, meaning that other recorded interviews of witnesses and suspects have not been made available.  The defense also requested that the government consider disclosure of anecdotal information provided by cooperators on an AEO basis. Notwithstanding the Government's potential change of direction on the death penalty, the Government has responded with a blanket 'no'—thus setting up what in these cases will be episodic requests for the Court to intervene.

In sum, the case is aged. Informal processes of discovery as has occurred here essentially mean that the Government provides discovery in a manner and at a pace that it so chooses.  The Government has now announced a change in its view of the case with the result that the defense requires  the Court's involvement in case and discovery management—and a discovery Order put in place.

This is not the first case involving Monterey County-related matters that has come to the attention of the Northern District of California.  The now well-known prosecutorial formula of seeking indictments for conspiracy to conduct the affairs of a racketeering organization and alleging a combination of overt acts and sentencing facts to make the case 'serious' and if the Indictment were superseded, potentially a death case, is being used here.  The case was in a self-contained 'life top' status because of the filing of a Notice that the Government was not seeking the death penalty.  But now, a year later, the Government is in the process (notwithstanding a recent Joint defense objection) of moving towards a review and reconsideration of the case.  All of this means that the latitude for the defense to agree to the Government's meandering schedule for disclosures

**MEMO OF Ps AND As IN SUPPORT OF MOTION FOR ORDER FOR CASE MANAGEMENT PLANAND DISCOVERY TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES**

of reports and case materials that provide the defense notice of what the Government's case is about no longer exists.  There are allegations in the indictment of: drug transactions; drug possession; weapons commerce; weapons possession; thefts of various kinds; assaults; shootings; attempted murders and murders. Information about these events is needed *as soon as possible*.

Many RICO conspiracy cases with murders charged in varying ways have been indicted and tried in this District. Some of them, including those that resulted in some of the resonating case management and discovery orders, are discussed below. The history of the litigation of such cases teaches that relying on *ad hoc* discovery plans, and representations that the discovery will be provided (at some point) will not facilitate the management of a case like this particularly where the government has put the possibility of the death penalty back on the table as they have done here

The Court is aware that in multi-agency cases, in joint investigations such as what has occurred here, the Government often points out the difficulty of managing discovery because State, County, and local agencies are involved in generating information. The corollary for discovery purposes is that when the Government agrees to pursue a multi-jurisdiction case, it knows what it's getting into. So does the Court. Compliance dates need to be set so that the cases that are likely to go to trial can actually be litigated as required.

These matters are discussed here in part to alert the Court that defense counsel in this matter do have experience in addressing some of the complexities of what has been the Government's approach to discovery management in cases in which the Government selectively serves as a "pass through" for State, County, and local law enforcement agencies who have assisted the Government in the conduct of their investigations.  The Government will state that it is providing discovery that it believes can be made available to the defense; that it is still obtaining discovery—and that certain disclosures, especially of cooperator information, cannot occur at this point in the case.

At this juncture, there is still a fair amount of basic case information that the

MEMO OF Ps AND As IN SUPPORT OF MOTION FOR ORDER FOR CASE MANAGEMENT PLAN AND DISCOVERY TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES

defense does not have access to.  Attorney Nicole Lambros has prepared a declaration explaining the efforts that have been made to obtain what, in effect, is some of the routine discovery. Attached to Ms. Lambros's declaration, the Court will find lengthy, and recent, discovery letters addressed to the Government by Ms. Lambros and by Ms. Shifman of July, 2025, containing pages of discovery requests.  On July 21, 2025, Ms. Lambros, Ms. Shifman, Richard Tamor and John Philipsborn met and conferred with counsel for the Government.  (AUSA Hageman and Supervisory AUSA Dautch). Without the Court's involvement in the discovery process, given that basic discovery has not been completed 15 months into the case, timely case preparation will not be occurring.  As the Court can see from the discovery letters from Attorneys Shifman and Lambros, basics need to be addressed: Lab reports; completing disclosures of ROIs from Federal investigators; completing incident by incident disclosure of County and local reports. A variety of forensic evidence analyses are either 'in progress' or have not yet been disclosed. Phone records are not yet fully disclosed.

### A.    <u>The Question Of The Death Penalty Still Looms In This Case</u>.

This Court may already be familiar with Judge Freeman's "Order Denying Without Prejudice Defendants' Motion to Preclude the Government From Withdrawing Its Notice That It Would Not Seek the Death Penalty, etc.  (Doc 264, July 18, 2025).  The Court did grant the defense's request to set a deadline for the filing of any "Notice of Intent to Seek the Death Penalty." (Doc. 264, filed July 18, 2025).

Of some concern to the defense is the position that the Government took in briefing the issues that resulted in the above-mentioned July 18 Order.  The Government's position, which bears some level of review by this Court in assessing the breadth of the discovery sought here, is that "…there are several affirmative reasons why the government has the right to withdraw its no-seek decision and instead seek the death penalty with respect to the conduct alleged in the indictment.  The government additionally has the right to seek the death penalty in a superseding indictment charging new death-eligible offenses based on evidence developed post-indictment." (Doc 257 at

p.6, Government "Opposition to Defense Motion to Preclude the Government From Withdrawing Its Notice That It Would Not Seek the Death Penalty"). Equally instructive is the Government's related argument that: "The executive branch has sole authority to decide what crimes it seeks to charge and the attendant penalties it will pursue." (Doc. 257 at pp.6-7).

For the reasons just explained, some of what is sought in this Motion is information pertinent to the defense of this case as a potential capital case. The defense anticipates the possibility that the Government may take the position that there is no death penalty-related charge in the current Indictment, and that, in any event, the Government has not yet decided on whether to pursue the death penalty. Clearly, the Court is concerned about the potential for death being an issue in the case. For the 'Joint Defense' the Court has allowed a total of six (6) Court-appointed lawyers to represent a total of three (3) accused. Three of the defense lawyers were recently appointed because of their specialized background in, and knowledge of, death penalty defense practice. The Government's position is that the actual pursuit of the death penalty against anyone in this case is an unknown. The defense's position is that if no preparation of the death penalty issues is done at this point, and in three months, or six months, or at any time before trial, as the government claims they have the right to do, and the Government changes the configuration of the case and death is on the table, the defense will have some level of explaining to do. Given these uncertainties, the Court should manage this, for the time being, as a potential capital case.

If the Government unequivocally announced that it was prepared to abide by any ruling foreclosing it from pursuing the death penalty, this Motion might read differently than it does.

## II.    STATEMENT OF THE CASE.

On April 18, 2024, the Government caused a single-count Indictment to be filed in this matter. (Doc. 1). The charge in Count One is a violation of 18 U.S.C. 1962(d), conspiracy to conduct the affairs of a racketeering enterprise. The Indictment alleges that

Salinas Acosta Plaza Nortenos, aka SAP— 'the enterprise'--is a street gang that operates in the City of Salinas, in Monterey County. The further allegation (Doc. 1 at pp.1-2) is that SAP aligns with the Nuestra Familia Prison Gang.  SAP is said to have originated in the Salinas Acosta Plaza Apartment Complex within the City of Salinas.  According to the Indictment, SAP has traditional rivals who are associated with Sureno street gangs.

Count 1 alleges that at a time unknown, no later than 2008, the named accused conspired to conduct and participate in the affairs of the SAP Enterprise.  Appended to the basic allegations, beginning at p.7, ¶ 15 of the Indictment, is an allegation of Overt Acts in furtherance of the conspiracy.  Those Acts are alleged to have taken place beginning in late August of 2009, and to have continued to take place until January 18, 2024.

A Notice of Special Sentencing Factors names the three men who are part of the 'Joint Defense' for the purposes of this Motion. Lorenzo Garcia is alleged, with one other person, to have murdered an individual on July 19, 2015.  Raul Suarez and Jose Saldana are alleged to have murdered a second individual on December 2, 2023.

The Indictment contains Forfeiture allegations, as well.

## III.    ARGUMENT AND AUTHORITIES.

In *United States v. W.R. Grace*, 526 F.3, 499, 508-509 (9th Circuit, 2008), the Ninth Circuit explained that :  "…a district court has the authority to enter pre-trial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery, and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligibly."  The ruling in *Grace* recognizes that depending on the issues presented, a District Court has the inherent power to require disclosure of both expert witnesses and their reports, as well as non-expert witness lists, well in advance of trial so that, among other things, "…the deadline would bring the necessary focus and organization to ready the case for trial." *Id.* at 513-514. The *Grace* ruling clarifies that the District Court has the ability to impose a case management and discovery approach to suit the issues in a

case.

District Courts have wide-ranging discretion to order disclosure of witnesses of various kinds – experts and lay witnesses alike – and that District Courts have discretion "…to order such a pre-trial disclosure, subject to the court's ability to tailor disclosures to specific concerns in a particular case, including the use of protective orders. [*Citation omitted*]. *Id.* at 512-513.

It has been a number of years now since Judge Alsup issued a wide-ranging Discovery Order in *U.S. v. Cerna*, 633 F.Supp.2d, 1053, 1058 (N.D. Cal., 2009), which acknowledged, among other things, the place that Case Management Orders can have in ensuring timely and useful litigation in multi defendant RICO conspiracy cases involving allegations of varying acts of violence. Other Judges in this District followed suit; for example, Judge Illston, who was initially confronted with a potential capital case in *United States v. Ortiz*, Case No. 12-CR-00119-SI, in a racketeering conspiracy case involving murder charges, and who relied in part on the Court's inherent authority to craft Case Management and Discovery Orders. *See, generally*, *United States v. Ortiz,* 2013 U.S.Dist. LEXIS, 16218 (N.D.Cal., February 5, 2013).

### A.    Brief Summary Of Discovery Provided To The Defense.

Through the case Discovery Coordinator, the Government has to date provided the defense with eight discovery productions. The defense has been advised by the government that they are working on a ninth production which at some point will be produced by them to  the Discovery Coordinator. On July 21st, 2025, during a meet and confer session between the parties to discuss discovery, the Government announced that a tenth production was being gathered by the agents to eventually be provided to the government for their review, redactions, and indexing before being able to provide that grouping to the Discovery Coordinator.

A variety of cataloguing conventions have been used to describe the discovery Production in the various indices that have been provided to the defenses. Beginning in Production 1, for example, the Government produced background information as to

MEMO OF Ps AND As IN SUPPORT OF MOTION FOR ORDER FOR CASE MANAGEMENT PLANAND DISCOVERY TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES

charged defendants, including: law enforcement records; some Instagram media files; business records evidencing the linkage between individuals and given Instagram 'monikers,' etc.  In Production 2, some reports began to be produced for specific acts, including:  The murder of M.H. in 2014; the attempted murder of Edgar in 2016; the murder and attempted murder in a stalled Jeep in 2019; the murder and attempted murder of transients in 2020; the murder of R.H. on September 20, 2020; and attempted murder of Victim 2; the murder of J.E. in 2021; the attempted murder of M.L. in 2023; the attempted murder of A.L. and J.R. on February 26, 2023; the shooting of R.B. on April 3, 2023; the attempted murder of a person named Alvarez in April of 2023; the murder of R.G. on May 20, 2023; the attempted murder of E.M. in June of 2023; the murder of G.S. on December 2, 2023; the robbery of an ice cream salesman in August of 2009; robbery in July of 2014; the robbery of a medical marijuana driver in August 2015; the robbery of mail in April of 2021; a robbery in March of 2023; a robbery in September of 2023; and a robbery in October of 2023.

Production 2 also included production of records of 'various offenses,' including: Possession of drugs; possession of drugs and guns; possession of methamphetamine and fentanyl; firebombing in July 2023; graffiti; a threat made in November 2023.

Production 3 also included miscellaneous reports of computer-generated firearm-related leads (NIBIN); information about search warrants; information about the arrests of various individuals (mainly those indicted).

Production 4 continued the production of arrest information (including miscellaneous reports of criminal activity.)  Production 4 also includes some downloads of social media; downloads from phones; some ballistics information; audio recordings; recordings of various kinds including security and surveillance cameras.

Production 5 involved police reports of investigations of various kinds, including historical investigations of some of the accused in the case.

Production 6 includes mainly social media "returns"; Instagram-related search warrant returns; field interviews; social media files.

**MEMO OF Ps AND As IN SUPPORT OF MOTION FOR ORDER FOR CASE MANAGEMENT PLAN AND DISCOVERY TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES**

In Production 7, there are Instagram accounts-related returns on search warrants; field interviews of several of the accused; miscellaneous social media files; some body camera footage from investigation of homicides and other incidents (these are incidents that are listed above).

Production 7 also includes reference to DNA work, including work done at SRI. The defense has been provided Production 8, with Productions 9 and 10 to follow.

**B.    A Pretrial Discovery Order in A Case Like This Should Be Wide Ranging and Provide for Prompt and Timely Disclosures.**

It bears reiterating that several Judges in this District have incorporated into their discovery orders in criminal cases the obligations placed on prosecutors by the California Rules of Professional Responsibility and the Rules of Professional Conduct, including Rule 3.8.  Rule 3.8 addresses the need for prosecutors to make "…timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows or reasonably should know tends to negate the guilt of the accused, mitigate the offense, or mitigate the sentence, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal."  California Rules of Professional Conduct, Rule 3.8. Rule 3.8 was discussed favorably in *United States v. Walker*, Case No. 17-CR-00570-EMC-1; 2018 U.S. Dist. Ct. LEXIS 102101.  Reviewing the ethical rule, Judge Chen concluded that "…the disclosure must be 'prompt' and 'timely'…," especially as trial approaches. *Id*.  *2-4. The ruling in Walker has been followed, particularly with respect to the setting of disclosure deadlines in view of Rule of Professional Conduct 3.8.  *See, for example, United States v. Wolfenbarger*, 2019 U.S. Dist. LEXIS 115764 (N.D. Cal., 2019).

**C.    Federal Rule of Criminal Procedure 12 Entitles the Defense to Make a Request for the Government That it Provide Notice of Its Intent to Use Evidence in Its Case in Chief That Any Accused May Be Entitled to Discover Under Rule 16.**

Federal Rule of Criminal Procedure makes it clear that the accused in a criminal case has the right to 'Notice of the Government's Intent to Use Evidence' (FRCP

9

12(b)(4)(B)), entitling the defense to "…request notice of the government's intent to use (in its case-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16."

### D.    Federal Rule of Criminal Procedure 16 Requires Production of the Defendant's Statements.

FRCP 16 provides that the disclosure in a Rule 16(a)(1)(A) of "…any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."  In addition, Rule 16(a)(1)(B) provides that the Government must disclose any written or recorded statements attributed to the defendant, provided that such statements are within the Government's possession, custody, or control, or the Government could, through due diligence, know that such a statement exists.

### E.    FRCP 16 and the Defendant's Criminal Record.

The accused is entitled to disclosure of the accused's prior record, to the extent that it is within the Government's possession, control, or custody, or if the prosecutor could become aware of it. FRCP 16(a)(1)(D).

### F.    Production of Physical and Documentary Evidence.

The defense is entitled to inspect and copy books; papers; documents; data within the Government's possession, custody, and/or control within the meaning of FRCP 16(a)(1)(E).

### G.    Disclosure of Physical or Mental Examinations.

The accused is entitled to inspect, copy, or photograph results of any physical or mental examination and of any scientific test or experiment which is in the Government's possession, custody, or control, or that the Government could, within the exercise of reasonable diligence, get access to under FRCP 16(a)(1)(E).

The defense is entitled to disclosure of expert witnesses 'in writing,' whether the evidence is introduced or sought to be introduced in the Government's case in chief or in the rebuttal to counter-testimony that the defense has timely disclosed.  The Rule

10

references Federal Rule of Evidence, Rules 702, 703, or 705. The disclosure must come sufficiently before trial so as to provide the defense "a fair opportunity…to meet the government's evidence." Rule 16(a)(1)(G)(i), (ii).

The Rule requires, in subsection (iii), "…a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter-testimony that the defendant has timely disclosed. . ." In addition, the same subsection of Rule 16(a)(1)(G) requires "the bases and reasons" for all opinions that Government experts will be stating, together with a statement of the witnesses' qualifications. The Rule also requires disclosure of a list of all publications authored in the previous ten years; a list of all other cases in which the witness has testified as an expert at trial or by deposition in the previous four years.

In making this request, the defense notes that as written, Rule 16((a)(1)(G) requires that: "The witness must approve and sign the disclosure, unless the government…" states in the disclosure why it could not obtain the witness's signature through reasonable efforts; or if the Government has previously provided a report under Rule 16(a)(1)(F) that contains the information required by (iii). The Rule was most recently amended in 2023.

### H.    Evidence of Crimes, Wrongs, or Acts (FRE 404(b)).

Under Rule 404(b)(3)(A), the defense has the right to "…reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it." In addition, any notice tendered by the Government to alert the defense to the Government's intent to introduce Rule 404(b) evidence is subject to a written notice (prior to trial), and the notice must "articulate" "…the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose…." FRE 404(b)(3)(B).

### I.    Jencks Act Statements, Including Those That Contain Exculpatory or Impeaching Evidence.

The Jencks Act, 18 U.S.C. section 3500, sets forth the right of an accused to

11

receive the statement or recorded statement of a Government witness or a prospective Government witness, once that witness has testified on direct examination.  The practice in this and other Districts, however, has resulted in Jencks Acts statements being addressed within the framework of 'pre-trial case management and discovery orders.' *See, generally, United States v. W.R. Grace, supra*, 526 F.3d 499, 508-509 (9th Cir., 2008), explaining that "…a District Court has the authority to enter pre-trial case management and discovery orders designed to ensure that the relevant issues to be tried are identified, that the parties have an opportunity to engage in appropriate discovery, and that the parties are adequately and timely prepared so that the trial can proceed efficiently and intelligently."

On occasion, the Government has made reference to the Ninth Circuit's rulings in *United States v. Jones*, 612 F.2d 453, 455 (9th Cir., 1979) and *United States v. Alvarez*, 358 F.3d 1194, 1211-1212 (9th Cir., 2004) as demonstrating that where *Brady* evidence is contained in Jencks statements, the Jencks Act standards control. As noted, in recognition of the fact that delayed *Brady/Giglio* disclosures create disorder, and in certain instances, are indicative of prejudicial delay that the defense cannot overcome at trial,  Jencks Act material is often disclosed in this District through use of timelines set forth in Case Management Orders.

**J.     Information About Non-Testifying Witnesses.**

The defense is entitled to information regarding witnesses to crimes charged in the Indictment that the Government decides that it will not call during the course of the trial. The Ninth Circuit decided this in *United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir., 1984), which upheld a District Court's Order requiring such a disclosure.  The Ninth Circuit explained its reasoning, as follows:

> "A person who has actually witnessed a crime through any of his senses can either provide evidence which is favorable to the defense or which may tend to raise a reasonable possibility that the accused is guilty.  Thus,

it was quite appropriate for the District Court to conclude from the fact that the Government did not intend to call a witness to the crime that there was a reasonable possibility that such person would be able to provide evidence favorable to the defense.  No further showing of materiality was required."

The *Cadet* Court went on to explain:

"Witnesses, particularly eyewitnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them." *Id*.

### K.    FRCP 26.2 Statements.

Both parties have the right under FRCP 26.2(a) to demand production of the statements of a witness who has testified on direct examination.  "Production" in this context means production of the entire statement. FRCP 26.2(b). As explained above, the Court can regulate the timing of these disclosures to provide for efficient case management.

### L.    Timely Disclosure of *Brady* and *Giglio* Evidence--Impeachment.

The accused has a right – provided by the Due Process Clause – to favorable evidence in the prosecution's possession that is material to guilt or punishment. *United States v. Agurs*, 427 U.S. 97, 106 (1976).  The Ninth Circuit has held that information tending to support a defendant's version of the facts is *Brady*.  *See, United States v. Hibler*, 463 F.2d, 455, 460 (9th Cir., 1972).

The defense is entitled to disclosure of prior bad acts of Government witnesses.

The Federal Rules of Evidence provide the Court discretion to permit the defense to cross-examine a government witness on specific instances of misconduct – so-called 'bad acts' – even if such behavior does not amount to a felony conviction, so long as the evidence is probative of the witness's untruthfulness. FRE 608 (b) [specific instances of

conduct as admissible on cross-examination if probative on the issue of truthfulness]. *United States v. Leake*, 642 F.3d 715, 718-719 (4th Cir., 1981); *United States v. Cole*, 617 F.2d, 151, 153-154 (5th Cir., 1980), *cert. denied*, 452 U.S. 918 (1981). Given that this is a permissible area of inquiry, the Government should disclose any behavior by its witnesses, which arguably constitutes such 'bad acts' reflecting on the witnesses' credibility.

Disclosure of bad acts by a source of information employed by the police investigators was part of a discussion by the United States Supreme Court in reversing the convictions in *Kyles v. Whitley*, 514 U.S. 419 (1995). Throughout the ruling in that case, the United States Supreme Court explained that there was information, including information known to the police, about an informant who had provided varying information, some of which there was reason to suspect was not truthful, and that law enforcement investigators were aware of reasons to disbelieve him. *Id*. at 423-425. The failure of the prosecution to disclose such information was viewed as part of the basis for vacating the conviction(s)—including a murder conviction—and remanding the case for further proceedings.

### M.    Promises of Consideration Made to Prosecution Witnesses.

The Government has an obligation to disclose any consideration offered to a witness or that the witness objectively hopes or anticipates that she or he will receive. *See, generally, Davis v. Alaska*, 415 U.S. 308, 315-316 (1974) (the exposure of a witness's motivation in testifying is an important function of the Constitutionally-protected right to cross-examination); *United States v. Brooke*, 4 F.3d, 1480, 1488-1489 (9th Cir., 1993) ("…when the case against a defendant turns on the credibility of a witness, the defendant has broad cross-examination rights.").

In *Giglio v. United States, supra*, 405 U.S. 150, 154, the Supreme Court held that the duty of disclosure is an affirmative one. It has to be discharged responsibly by the Government. The ignorance of one prosecutor as to promises made to a government witness by another prosecutor does not excuse the failure to disclose. The Ninth Circuit

14

has held that the defense is entitled to broad discovery of a witness's status as an informer, and to information about any promises or grants of immunity from the prosecution. *United States v. Bernal-Obeso*, 989 F.2d 331 (9th Cir., 1993).

### N.    The Government Should Identify and Disclose All Prior Statements of Witnesses Bearing on the Issues in the Case.

Each occasion on which a government witness has testified, been interrogated, or given statements about the current case should be disclosed so that the defense can obtain reports of the statements, or order transcripts of pertinent testimony for use in cross-examination, and/or to permit the defense to investigate sources of extrinsic impeachment.  As the Ninth Circuit put it in *Bernal-Obeso, supra*, 989 F.2d 331: "…we expect the prosecutors and investigators to take all reasonable measures to safeguard this system against treachery. This responsibility includes the duty, as required by *Giglio*, to turn over to the defense in discovery all material information casting a shadow on a government witness's credibility." *Id*. at 334. The defense notes that District Courts have granted a defense request that the Government disclose all of the witness's proffers or any other material that would show how an immunity agreement was reached with a cooperating witness.  *United States v. Sudikoff*, 36 F.Supp.2d, 1196, 1203-1204 (C.D. Cal., 1999), relying in part on *U.S. v. Shaffer*, 789 F.2d 682, 689 (9th Cir., 1986).

In *Mesarosh v. United States*, 352 U.S. 1 (1956), the Supreme Court reversed convictions when evidence of a witness's untruthfulness in other proceedings was belatedly brought to the Court's attention by counsel for the Government – in that case, the Solicitor General.  The Court reasoned that since the witness gave untrue testimony in other proceedings, his testimony in the current case was inevitably discredited.

This principle has been applied to the testimony of law enforcement officers.  *See, generally, United States v. Chisum*, 436 F.2d, 645 (9th Cir., 1971); *United States v. Miramon*, 443 F.2d 361, 362 (9th Cir., 1971).

### O.    Reports of Misconduct of Officers Working on Case Investigation.

Reports of misconduct by law enforcement officers, and especially those reports,

and related findings bearing on an officer's credibility, are subject to disclosure under *Brady v. Maryland, supra*, 373 U.S. 83, and *Giglio v. United States, supra*, 405 U.S. 150. The Ninth Circuit has addressed the disclosure of material contained in law enforcement personnel records which are in the Government's possession and control.

In this District, particularly where there have been 'task forces' or 'task force officers' involved in investigations, the Government has requested that local, or County agencies review personnel files and disclose pertinent material to the Federal Government for disclosure to the defense.  This has also happened in cases involving investigations conducted in part by the California Department of Corrections and Rehabilitation.  *See, generally, United States v. Henthorn*, 931 F.2d 29 (9th Cir., 1991). In *Henthorn*, specifically, the accused was indicted, along with a number of others, for a conspiracy to import cocaine and related evidence.  The Court referenced its prior ruling in *United States v. Cadet, supra*, 727 F.2d 1453, explaining, in *Henthorn*, that it is not the defense's burden to make an initial showing of materiality of an allegation of historical misconduct by a law enforcement officer. The obligation "…to examine the files arises by virtue of the making of a demand for their production." *Id*. at 30-32.

If the Government contends that there are allegedly privileged materials or potentially disputed materials in personnel files of law enforcement officers, following the procedure set forth in *United States v. Cadet*: "…it may submit the information to the trial court for an in-camera inspection and evaluation…." *Cadet, supra*, 727 F.2d at 1467-1468.

P.   **Given the Current Record in This Case That Includes the Government's Arguments That It Has the Prerogative to Change the Charges and To Seek the Penalty of Its Choice, The Defense Must Prepare Accordingly.**

The District Court, in an Order dated July 18, 2025, denied without prejudice a defense Motion seeking to foreclose withdrawal of the Government's Notice that it would not seek the death penalty in this case.  ("Order Denying Without Prejudice Defendants' Motion to Preclude the Government From Withdrawing its Notice That it Would Not

Seek the Death Penalty; and Setting Deadline of August 14, 2025, For Government to File Any Notice of Intent…," Doc. 264 – hereafter, 'Court's Order.')  In the Court's Order, the Court acknowledged that the Government had argued that: "…prosecutorial discretion and the specific circumstances of this case support the Government's right to seek the death penalty in a superseding indictment." Court Order, at p.4.

At present, Judge Freeman has set an August 14, 2025, deadline for the Government to file a Notice that it intends to seek the death penalty. Court's Order, at p.8.  While such a filing would be an exercise in futility, since at present there are no death-eligible charges in the pending indictment, the defense understands that, first, the Government may either attempt to lodge a 'place holder' notice of intent to seek the death penalty and/or eventually may seek a death eligible indictment and then try to file a notice of intent to seek the death penalty.

Given the Government's filing of its earlier Notice not seeking the death penalty, the defense fully intends to challenge any i filed Notice of Intent.  With  the Government's argument that it has the "sole authority" to decide both what crimes it seeks to charge and the related penalties – with their claims that Courts have only limited supervisorial authority over executive branch decision-making on this score – at this point, given this sea change in the case, it makes sense that the accused now seek the Court's supervision via a case management and discovery production order so that they can be prepared to investigate, litigate, and negotiate these cases as either potential or actual capital cases.

That on June 16,  2025, the Government notified these  accused  that the Capital Case Committee sought their attendance and input as they consider  the authorization of the pursuit of death penalty, demonstrates that defense counsel must  be prepared to investigate, and if necessary, to litigate questions about the eligibility of the three accused for the death penalty within the meaning of 18 U.S.C. section 3591 (referencing death penalty eligibility). Similarly, defense counsel now urgently need to investigate and be prepared, if necessary to litigate any allegations of statutory factors in mitigation and

aggravation within the meaning of 18 U.S.C. section 3592.

There is considerable discussion in the case law, including guidance from the United States Supreme Court, about the consideration of issues in death penalty cases. The United States Supreme Court has observed that in reaching life or death decisions, "[t]he emphasis shifts from narrowing the class of eligible defendants by objective factors to individualized consideration of a particular defendant." *Sawyer v. Whitley*, 505 U.S. 333, 343 (1992). Defense counsel are central to that process. Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 NYU Law Review, 299 (1983), cited in *Strickland v. Washington*, 466 U.S. 668, 690-691 (1984). As the Court pointed out in Strickland, the Sixth Amendment "…imposes on counsel a duty to investigate, because reasonably effective assistance must be based on professional decisions and informed legal choices, can be made only after investigation of options." Id. at 680-682. In *Strickland* (and elsewhere), the Supreme Court has pointed to standards like the ABA *Standards for Criminal Justice* ("The Defense Function") as guides that reflect 'prevailing norms of practice.' The ABA's 'Criminal Justice Standards for the Defense Function,' which were updated in 2017, address the duties of defense counsel in communicating with their clients, and in investigating and adequately prepare the defense of the case given the case context, based on relevant legal research and factual investigation. (Standard 4-4.6(a)).

In death penalty cases, counsel are also guided by the ABA *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (2003, with Mitigation Supplement in 2008). The United States Supreme Court made reference to the utility of considering the ABA 'Death Penalty Guidelines' in assessing the effectiveness of counsel in addressing evidence in aggravation and in mitigation when it decided *Wiggins v. Smith*, 539 U.S. 510, 523-524 (2003). The *Wiggins* Court explained that where counsel are aware that their client is facing the potential of a death penalty trial, and counsel had some indication that the client had been involved in prior mental health treatment, counsel had a duty to follow up on what was reasonably interpretable as

mitigating evidence. *Id*. at 525-527.

More basically, in *Rompilla v. Beard*, 545 U.S. 374, 391 (2005), the Court noted that defense counsel must conduct thorough investigations into their client whenever counsel are aware that the death penalty may be an issue in the case. There is wide-ranging discussion of the need for thorough, and reliable, investigations into individuals' social, familial, educational, medical, developmental, and psychological histories in a capital case. *Andrus v. Texas*, 590 U.S. 806; 140 S.Ct. 1875, 1883-1885; also, *Wiggins, supra*, 539 U.S. 510 at 524-525. *See, also, Jones v. Ryan*, 52 F.4th 1104, 1117-1118 (9th Cir., 2022).

This case is unusual in that it has been pending for a considerable period of time and has been treated – for very good reason – by the defense as though it was a non-capital case. The Government had filed a Notice that it was not seeking a death penalty early in the case. Only recently, pushed by developments that are related to the change in Presidential Administration, and changes in the management that the U.S. Department of Justice, has there been discussion of this case, and of these three accused, being placed in a position of having their cases dealt with as potential death penalty cases.

The record in this case indicates that there have been **no motions for Case Management Orders or for discovery based on the potential for any of the accused to be the subject of the death penalty**. The defense in this case is well aware of the cases that have underscored that there is no discovery right that is provided to the defense as a result of the authorization process. *See, generally, United States v. Fernandez*, 231 F.3d, 1240, 1247-1248 (9th Cir., 2000). *See, also, U.S. v. Furrow*, 100 F.Supp.2d, 1170, 1173-1178 (C.D. Cal., 2000) (indicating that the defense is not entitled to discover evidence or information prepared by the Government bearing on the Department of Justice's death penalty decision-making process in a given case. That said, there are also cases indicating that death penalty related material needed to be produced to the defense in time for use in any discussion by defense counsel of the reasoning for the Government not to pursue death against individuals. *See, for example, United States v. Perez*, 222 F.

19

Supp. 2d. 164, 167-70 (D. Conn., 2002); also *United States v. Delatorre*, 438 F. Supp 2d. 892, 900-901, (N.D., Ill 2006).  *Brady* evidence must be afforded to the accused at a point in the proceedings at which that evidence had the probability of altering the outcome of proceedings.  *United States v. Lehman*, 756 F. 2d 725, 729-730 (9th Cir, 1985).

During the July 21, 2025 meet and confer session that counsel attended, defense lawyers asked counsel for the Government about getting access to timely disclosure of the facts—including witness reports—of the homicides that would be the basis for pursuit of both guilt, and the death penalty if the latter is pursued. Government counsel explained that some further information about pertinent homicides will be made available, but not cooperator reports. In the case of Mr. Saldana and Mr. Suarez and the December 2, 2023 homicide allegation, the anecdotal information provided is that narrative information comes from at least one cooperator. Defense counsel asked if the Government intended on producing AEO summaries of cooperator information. The Government indicated that it does not intend to do so.  The defense intends on asking the Court to address that state of affairs.

During the hearing before Judge Freeman, held on July 15, 2025, AUSA George Hageman represented that he had some understanding of information in mitigation pertinent to all three of the accused. On July 22nd, counsel asked Mr. Hageman about that information, some of which he supplied—the accused are young; they were young at the time of the shooting. It may be that the Government has additional information of consequence to the analysis of mitigating both guilt and penalty issues at hand as well as information relating to aggravating factors. That information is also ripe for discovery production now.

///

///

///

///

///

20

**MEMO OF Ps AND As IN SUPPORT OF MOTION FOR ORDER FOR CASE MANAGEMENT PLAN AND DISCOVERY TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES**

## IV.    CONCLUSION.

For all of the reasons set forth here, this Court should grant the defense's Motion for Discovery and enter the Order submitted by the defense.

Dated: July 24, 2025

Respectfully submitted on behalf of these three defendants by:

JOHN T. PHILIPSBORN
*APPEARING ON BRIEF FOR MR. GARCIA, MR. SUAREZ, AND MR. SALDANA*

By:    /s/ John T. Philipsborn
         John T. Philipsborn
         Counsel for Jose Saldana

MEMO OF Ps AND As IN SUPPORT OF MOTION FOR ORDER FOR CASE MANAGEMENT PLANAND DISCOVERY TO FACILITATE REPRESENTATION OF INDIVIDUALS POTENTIALLY FACING DEATH PENALTY; MOTION FOR TIMELY DISCLOSURES TO PERMIT EFFECTIVE DEFENSE REPRESENTATION DURING PRE-TRIAL LITIGATION AND AT ANY TRIAL OF THESE CASES